NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRANCISCO ROSARIO, | Civil No. 08-5185 (RMB) |
| Plaintiff, |  |
| v. | **OPINION** |
| JOHN DOE, et al., |  |
| Defendants. |  |

**APPEARANCES**:

DON ANTHONY INNAMORATO
E. DAVID KRULEWICZ
Reed Smith LLP
136 Main Street, Suite 250
Princeton, NJ  08543
Attorneys for Plaintiff

SUSAN MARIE SCOTT
Office of New Jersey Attorney General
P.O. Box 112
Trenton, NJ  08625
Attorney for Defendant Corrections Officer John Doe

PAUL JOSEPH SMYTH
SEAN X. KELLY
Marks O'Neill O'Brien & Courtney PC
6981 N. Park Drive, Suite 300
Pennsauken, NJ  08109
Attorneys for Defendants Correctional Medical Services and
Nurse Jane Doe

**BUMB, United States District Judge**:

In this case, Plaintiff Francisco Rosario claims that

Defendants Correction Medical Services, Inc. ("CMS"), Nurse Jane Doe

and Correctional Officer John Doe were deliberately indifferent to

his medical needs in violation of his Eighth Amendment rights, contrary to 42 U.S.C. § 1983. Plaintiff also brings state law claims. Before the Court are three unopposed motions to seal and a motion for summary judgment filed by Defendant CMS pursuant to Federal Rule of Civil Procedure 56(a). This Court has reviewed the pleadings, the parties' written submissions, depositions, and other documentary evidence, and considered the matter pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, this Court grants the motions to seal, dismisses Defendants Nurse Doe and Corrections Officer Doe, grants summary judgment to CMS on Plaintiff's federal claim, and declines to exercise supplemental jurisdiction as to the only remaining state law claims.

## I. BACKGROUND

On October 11, 2008, Francisco Rosario, then incarcerated at New Jersey State Prison, executed a civil rights Complaint asserting claims under 42 U.S.C. § 1983 against South Woods State Prison ("SWSP"), the Administrator of SWSP, Corrections Officer Doe, Nurse Doe, and CMS. (Compl., ECF No. 1.) In the Complaint, Plaintiff alleged that on March 1, 2007, Corrections Officer Doe, who worked the 2:00 p.m. to 10:00 p.m. shift at SWSP, together with Nurse Doe, forced Plaintiff's extremely swollen left foot into a shoe that was too small for it, thereby stopping the flow of blood into the foot and causing the development of gangrene and eventual toe amputation.

(*Id.* at 4, 6.)  Rosario further asserted that Officer Doe took away his wheelchair and required him to crawl back to his cell.  (*Id.*)

On screening, this Court granted Plaintiff's application to proceed *in forma pauperis*, dismissed SWSP as a defendant, and ordered service of the Complaint upon the remaining defendants.  (Order, ECF No. 4.)  United States Magistrate Judge Karen Williams subsequently appointed pro bono counsel for Plaintiff.  (Order, ECF No. 17.)

Plaintiff's counsel thereafter filed an Amended Complaint against George Hayman, Commissioner of the New Jersey Department of Corrections; Karen Balicki, SWSP's Administrator; Correctional Officer John Doe; CMS; and Nurse Jane Doe.  (Am. Compl., ECF No. 35.)  Then, on August 26, 2010, Plaintiff voluntarily dismissed Defendants Hayman and Balicki (Stipulation, ECF No. 55), and, on October 18, Defendant CMS filed an Answer (Answer, ECF No. 59).

In the Amended Complaint, Plaintiff asserts that he is 58 years old, has been incarcerated by the New Jersey Department of Corrections since 1997, and has a known medical history of high blood pressure, high cholesterol, diabetes, and significant cardiovascular disease.  Specifically, he alleges that in February 2007, while incarcerated at SWSP, CMS officials provided medical care consisting of topical applications for an open laceration on his left foot, which interfered with his ability to walk.  He asserts that on or about March 1, 2007, Officer Doe transported Rosario by

wheelchair to the infirmary for treatment by Nurse Doe. He alleges that he complained to Nurse Doe that his wound was not healing and he showed her his painfully swollen foot, but she "disregarded Mr. Rosario's complaints and, instead of examining his foot and wound, directed him to put his sock and shoe on and return to his cell." (Am. Compl., ECF No. 35 at ¶¶ 21-22.) He alleges that he "refused to put the shoe on as the swelling had made it extremely painful for him to do so," and he asked Nurse Doe to properly examine his foot or get a doctor to do so. (*Id.* ¶ 25.) He asserts that Officer Doe then "physically restrained Mr. Rosario and instructed Nurse Doe to force Mr. Rosario's shoe onto his foot." (*Id.*) He alleges that, "[t]ogether, C.O. Doe and Nurse Doe then forced Mr. Rosario's left foot into his prison issued shoe causing severe pain and physical injury to Mr. Rosario," and then Officer Doe "took Mr. Rosario's wheelchair away from him and ordered him to walk back to his cell without any type of aid or assistance." (*Id.* ¶¶ 27, 30.) Plaintiff asserts that after returning to his cell, he became gravely ill and was transported to St. Francis Medical Center for medical care. (Id. ¶ 31.)

Plaintiff claims that Officer Doe violated his Eighth Amendment rights by physically restraining him, forcing a shoe on his swollen foot, taking away his medically necessary wheelchair, and requiring him to walk on his injured foot. (*Id.* ¶¶ 36-43.) He contends that

Nurse Doe violated his Eighth Amendment rights by forcing him to put the shoe on his swollen foot and failing to provide proper care and treatment for his foot. (*Id.* ¶¶ 50-56.) He claims that "CMS is independently liable to Mr. Rosario for its failure to adequately screen, train and supervise its employees assigned to the SWSP and fail[ure] to adopt, formulate, maintain and/or enforce customs, policies and procedures to insure that Mr. Rosario received adequate medical treatment and was not, otherwise, subjected to deliberate indifference as to his serious medical needs." (*Id.* ¶ 56.)

In addition, Plaintiff claims that Nurse Doe violated New Jersey state law by negligently or deliberately breaching her duty to provide Plaintiff with proper and appropriate medical treatment, intentionally committing an assault and battery on Plaintiff, and intentionally inflicting emotional distress on Plaintiff. The Complaint asserts that Officer Doe is also liable for assault and battery, and intentional infliction of emotional distress. He also contends that CMS violated New Jersey state law by, among other things, failing to adopt, formulate, maintain and enforce policies and procedures to insure that Rosario was provided non-negligent medical care, and by failing to hire and supervise competent employees. He further claims that, pursuant to the doctrine of respondeat superior, CMS is liable under New Jersey law for Nurse

Doe's and Officer Doe's assault and battery and intentional
infliction of emotion distress.

Presently before this Court are three unopposed motions to
seal—two brought by Plaintiff and one brought by Defendant CMS, as
well as a motion for summary judgment brought by CMS.  (Motions, ECF
Nos. 151, 156, 168, 173.)  Plaintiff filed a memorandum of law and
accompanying materials in opposition to summary judgment, and CMS
filed a letter in reply.  (ECF Nos. 167, 175, 176, 177.)

## II.  DISCUSSION

A.  Motions to Seal

Rosario moved to seal several paragraphs in CMS's Statement of
Material Facts and in his Counterstatement of Material Facts, which
contain information from Rosario's medical records, and to seal the
September 2007 Discharge Summary from St. Francis Medical Center.
(ECF Nos. 151-3, 167-1 at 59-65, 167-3.)  CMS moved to seal
proprietary documents attached to its letter reply in support of
summary judgment, which were produced pursuant to a discovery
Confidentiality Order.  (*See* ECF No. 173; Confidentiality Order, ECF
No. 141.)

"It is well-settled that there exists, in both criminal and
civil cases, a common law public right of access to judicial
proceedings and records."  *In re Cendant Corp.*, 260 F.3d 183, 192
(3d Cir. 2001) (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 677–

78 (3d Cir. 1988)). This common law right "encompasses all judicial
records and documents [and] includes transcripts, evidence,
pleadings, and other materials submitted by litigants . . . ."
*United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007) (quoting
*United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984)). Thus,
a party seeking to seal portions of court records from public access
must make a particularized showing of good cause for protection of
specific material. *See Wecht*, 484 F.3d at 212.

To that end, Local Civil Rule 5.3, which "govern[s] any request
by a party to seal," L. Civ. R. 5.3(a)(1), requires the moving party
to describe "(a) the nature of the materials or proceedings at issue,
(b) the legitimate private or public interests which warrant the
relief sought, (c) the clearly defined and serious injury that would
result if the relief sought is not granted, and (d) why a less
restrictive alternative to the relief sought is not available." L.
Civ. R. 5.3(c)(2). Rule 5.3 further provides that an opinion on a
motion to seal "shall include findings on the factors set forth in
(c)(2) above as well as other findings required by law . . . ." L.
Civ. R. 5.3(c)(5).

Here, each motion to seal satisfies Rule 5.3(c)(2)(a), as the
specified materials contain Rosario's private medical information
or proprietary materials of CMS subject to a Confidentiality Order.
The motions satisfy sections (c)(2)(b) and (c), as a person's medical

records are private,[1] and CMS's employee documents are protected by a Confidentiality Order. (ECF No. 141.) Finally, since only those portions of the filings which contain either private medical information or proprietary information will be sealed, this Court finds that no less restrictive alternative is available. *See* L. Civ. R. 5.3(c)(2)(d). This Court will grant the Motions to Seal and direct Plaintiff to file an unredacted version of ECF Nos. 167-1 and 167-3 under seal, and direct CMS to seal ECF No. 177 and file a redacted version of ECF Nos. 151-3[2] and 177. *See* L. Civ. R. 5.3(c)(5).

## B. Dismissal of Federal Claims Against Officer Doe and Nurse Doe

Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. While use of John Doe defendants is permissible, "[i]f reasonable discovery does not unveil the proper identities, . . . the John Doe defendants must be dismissed." *Blakeslee v. Clinton County*, 336 F. App'x 248, 250 (3d Cir. 2009);

---

[1] *See Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) ("We have long recognized the right to privacy in one's medical information...."); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("There can be no question that ... medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.").

[2] Pursuant to this Court's Order of September 7, 2012 (ECF No. 154), this document is currently under temporary seal pending disposition of Plaintiff's motion to seal addressed herein (ECF No. 156).

*see also Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed . . . if discovery yields no identities.").

In this case, Plaintiff conducted extensive discovery for more than two years, during which time Plaintiff took depositions of several CMS nurses employed during the relevant time period and sought personnel and employment records from CMS in an attempt to identify Nurse Doe. (*See* Pl.'s Br., ECF No. 167, at 11; Letter, ECF No. 127.) Magistrate Judge Karen Williams presided over several discovery disputes that involved Plaintiff's attempts to identify the Doe defendants. For example, Plaintiff raised this issue in a January 26, 2012 letter to Judge Williams, and Judge Williams then held a telephone conference call on January 30 to address outstanding discovery issues. (Letter, ECF No. 127.) The parties subsequently agreed to a Confidentiality Order designed, in part, to govern employment records that Judge Williams had ordered CMS to produce (Certification, ECF No.138). On April 4, 2012, Judge Williams held an in-person conference to address the remaining discovery disputes raised by the parties. (Order, ECF No. 142.) Yet, despite Plaintiff's attempts to identify the Doe defendants, he has failed to do so and discovery is now closed. Under these circumstances, this Court will dismiss the federal claims against Nurse Doe and Corrections Officer Doe with prejudice pursuant to Rule 21. *See*

*Blakeslee*, 336 F. App'x at 250-51 ("Blakeslee had approximately ten months of discovery to allow her to identify the individual John Doe defendants and thereafter to amend her complaint. By her own admission, she conducted extensive discovery, including a 'wide range of depositions from all positions of the officers, employees, and related personnel' at CCCF. In light of these facts, we affirm the District Court's dismissal of the John Doe defendants . . . ."); *Williams v. New Jersey Div. of State Police*, Civ. No. 10-3478 (DRD), 2012 WL 1900602 (D. N.J. May 24, 2012); *Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D. N.J. 2006).

## C.  Summary Judgment Standard

Substantively, Rule 56(a), provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Rule 56 also has procedural requirements. First, the moving party must "identify[]each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). Second, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . , admissions,

interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) and (B).  Finally, the Court "may consider other materials in the record," Fed. R. Civ. P. 56(c)(3), and "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  And if the movant "fail[s] to show the absence of any disputed material fact . . , the District Court err[s] in granting summary judgment." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 148 (1970).  A defendant moving for summary judgment may carry its initial burden in two ways:  (1) producing evidence that negates an essential element of plaintiff's case, *see* Fed. R. Civ. P. 56(c)(1)(A); *Adickes*, 398 U.S. at 158, or (2) pointing

out by relying on discovery that the plaintiff has no evidence to prove his or her case, "a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[W]hen determining whether the moving party has proven the absence of a genuine material issue of fact, the facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true, and the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Aman v. Cort Furniture Rental Corp.*, 85 F. 3d 1074, 1080-81 (3d Cir. 1996) (citations and internal quotation marks omitted).

D.  Summary Judgment Motion on Eighth Amendment Claim

This case concerns Rosario's Eighth Amendment claim against CMS for deliberate indifference to his foot ulcer which resulted in the development of gangrene and amputation of his toe. CMS was the contract medical provider for the State of New Jersey at SWSP, the facility where Rosario was confined. As discussed, Rosario, a diabetic, claims that an unidentified nurse forced a boot onto his

swollen foot, which, because of the disruption of blood flow, resulted in gangrene that led to the amputation of his left fifth toe.

The Eighth Amendment's prohibition against cruel and unusual punishment obligates prison authorities to provide medical care to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To state a claim under the Eighth Amendment, an inmate must satisfy a subjective element and an objective element. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An inmate must "demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." *Rouse*, 182 F.3d at 197.

Deliberate indifference includes "indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (quoting *Estelle*, 429 U.S. at 105) (footnotes and internal quotation marks omitted). Deliberate indifference has been found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical

treatment.  *See Rouse*, 182 F.3d at 197.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).

The only specific behavior Rosario refers to in his Amended Complaint is the incident when Nurse Doe, with the help of Officer Doe, forced Rosario's infected and swollen foot into a shoe that no longer fit and then Officer Doe required Rosario to crawl back to his cell.  Rosario's foot infection was undoubtedly a serious medical need.  Rosario's allegations concerning the shoe incident, if true, are sufficient to show the deliberate indifference of Nurse Doe and Officer Doe, since the deliberate infliction of pain satisfies the deliberate indifference standard under the Eighth Amendment.[3]

---

[3] *See Estelle*, 429 U.S. at 102 (noting that the Eighth Amendment proscribes punishments "which involve the unnecessary and wanton infliction of pain") (citation and internal quotation marks omitted); *Wilkerson v. Utah*, 99 U.S. 130, 136 (1879) ("(I]t is safe to affirm that punishments of torture . . . and all others in the same line of unnecessary cruelty, are forbidden by [the Eighth] amendment . . ."); *Milton v. Turner*, 445 F. App'x 159, 164 (11th Cir. 2011) (corrections officer who knowingly forced diabetic inmate with an infected foot to mow the grounds violated Eighth Amendment by delaying medical treatment and deliberately inflicting pain); *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) ("What separates this complaint from ordinary allegations of medical malpractice are (1)

The parties vigorously disagree as to whether or not the facts concerning the shoe incident are in dispute and, therefore, would require this Court to deny the summary judgment motion. The shoe incident, however, is material for the purposes of summary judgment only if there is sufficient evidence to demonstrate that an omission in CMS's policies, training or supervision caused the shoe incident or otherwise caused CMS employees to be deliberately indifferent to Rosario's diabetic foot ulcer.[4] CMS, the lone remaining defendant, cannot be found liable under 42 U.S.C. § 1983 simply because it employed a nurse who was deliberately indifferent to Rosario's serious medical needs. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691-92 (1978) ("In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."); *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). In order for CMS to be found liable under § 1983, Rosario must show that CMS

---

allegations that the doctor intended to inflict pain on prisoners without any medical justification and (2) the sheer number of specific instances in which the doctor allegedly insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm to the prisoners").

[4] "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc*., 707 F.3d 417, 425 (3d Cir. 2013).

had a relevant policy or custom and this policy or custom caused deliberate indifference to Rosario's foot ulcer or infection.[5] *Natale*, 318 F.3d at 583-84; *accord Jiminez v. All Am. Rathskeller, Inc.*, 503 F. 3d 247, 249 (3d Cir. 2007) (plaintiff must show a "direct causal link between a . . . policy or custom and the alleged constitutional deprivation.") (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). On this point, CMS argues that despite extensive discovery, Rosario has produced no evidence to prove that his infection, gangrene or amputation were caused by a custom or policy of CMS. CMS further contends that Rosario has not identified any specific deficiency in the customs or policies of CMS, and has relied entirely on the shoe incident itself to establish the liability of CMS.

Relying on this Court's 2009 decision in *Ross v. Monge*, Civ. No. 07-2693 (RMB), 2009 WL 1291814 (D.N.J. May 4, 2009), Rosario contends that CMS "pursued a policy of inaction when it came to training, educating and supervising its medical staff" with regard to Rosario's "unhealing, diabetic foot wound, the pain and swelling he presented for over a month and the numerous missed opportunities

---

[5] The plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F. 3d 636, 658 (3d Cir. 2009). Policy includes the decisions and acts of policymaking officials and "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (citation omitted).

its staff had to perform diagnostic tests and/or to refer Mr. Rosario to a podiatrist once they failed to see any improvement from the treatment they prescribed . . . and Mr. Rosario was, therefore, forced to suffer an amputation because of *inter alia*, gangrene that ultimately developed in the foot." (Pl.'s Br., ECF No. 167-2 at 6-7.) Thus, Rosario argues that his gangrene and amputation resulted from CMS's "failure to adopt policies, procedures and training which would have prevented his injury." (*Id.* at 13.) "Mr. Rosario respectfully submits that CMS's conscious inattention to the screening, training and supervision of its employees and agents presents the same type of 'deliberate indifference' this Court has already found may give rise to an actionable claim under Section 1983." (*Id.* at 15.) To support this argument, Rosario states that none of the nurses Rosario deposed could recall receiving from CMS training concerning the treatment and care of diabetic patients and foot wound care for diabetic patients. (*Id.*)

In response, CMS argues that the evidence before this Court refutes the existence of a policy of inaction, and demonstrates that CMS consistently provided medical care for Rosario's foot ulcer and foot infection once he notified the medical staff of a foot ulcer in August 2007. (Def.'s Reply Br., ECF No. 176 at 6-8.)

A review of the depositions and the electronic medical record of Rosario's care supports CMS's argument.[6] The record shows that on August 24, 2007, Dr. Abu Ahsan examined Rosario during a chronic care endocrine visit and noted macerated skin between his toes. (ECF No. 159-4 at 42.) The medical record shows that medical staff subsequently checked Rosario's blood glucose level on a consistent basis and performed foot soaks. On September 10, 2007, Rosario presented at sick call with left foot pain. (ECF No. 159-4 at 22.) On that date, RN Melody Pariola noted "diabetic left foot with ulcer between 4th and 5th toes" (*id.* at 23), and Nurse Practitioner Fran Green ordered Bactrim and warm foot soaks (*id.* at 21).

On September 13, 2007, CNA Latoya James noted that Rosario did not show at the morning medline for Bactrim for three consecutive days (*id.* at 18), and on September 15, 2007, LPN Donna Arcangeli noted that Rosario was "not coming to medline for bactrim bid." (*Id.* at 15.) Again, on September 16, 2007, Nurse Practitioner Fran Green

---

[6] Rosario objects to consideration of his electronic medical records on the ground that they are not properly authenticated. Rule 56(c)(1)(A) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by [] citing to particular parts of materials in the record, including . . . electronically stored information . . ." Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." As Rosario has not alleged or demonstrated that his electronic medical records "cannot be presented in a form that would be admissible in evidence," *id.*, this Court will consider them in deciding the summary judgment motion. *Cf.* Fed. R. Evid. 803(6).

noted that Rosario did not show for bactrim in the morning. (*Id.* at 14.) On September 17, 2007, at about 7:30 a.m., RN Melody Pariola contacted Dr. Briglia for a medical emergency after Rosario was found on the floor of his cell; Rosario was taken to the infirmary for chest pain, tremors and shortness of breath. (*Id.* at 1-12.) Rosario was then sent to South Jersey Medical Center, after which he returned to SWSP and was admitted to the infirmary. At 5:52 p.m., he was discharged. (ECF Nos. 159-4 at 1, 159-3 at 75.)

The next morning, on September 18, 2007, Rosario saw RN Mary Ellen Green at sick call for pain in his left foot. (ECF No. 159-3 at 71-74.) Her notes show that she saw a reddened area of 9 by 5 centimeters on his left foot and indicate that, through a social worker who translated, Rosario informed Green that he did not understand that he had to go to the medline to receive his antibiotic medication. Therefore, Nurse Green gave him the medication to keep on his person after explaining its use. (*Id.*)

The record further reveals that the foot soaks and glucose checks were continued, and on September 23, 2007, RN Mary Ellen Green saw Rosario again at sick call for pain, swelling and redness on his foot. (ECF No. 159-3 at 63-67.) Nurse Green gave him pain medication and noted in his chart that, although he had been taking antibiotics, his foot had not improved. (*Id.* at 65.)

19

On September 24, 2007, Nurse Practitioner Fran Green examined Rosario in the presence of a Spanish interpreter. (*Id.* at 59-61.) She noted that his foot had been infected for one month and had been treated with soaks and oral antibiotics, but the foot was still red, painful, tender and swollen. (*Id.*) Green changed the medication from Bactrim to Levaquin and metronidazole, ordered an x-ray of the foot and a blood test (CBC with differential), and submitted a request for a consultation with a podiatrist. (*Id.*) The notes indicate that a special request was made for Levaquin, a non-formulary drug, on the ground that the infection in Rosario's left foot was not responsive to Bactrim. (*Id.* at 56.)

The record shows that on September 26, 2007, Rosario was transported to South Jersey Regional Medical Center on an emergency basis due to chest pain and left leg pain, and he was then admitted to St. Francis Medical Center. (ECF No. 159-3 at 51-54.) Notes indicate the foot was painful, swollen and reddened. (*Id.* at 52.) The foot was x-rayed on September 27, 2007, and the x-ray indicated "[s]oft tissue swelling without apparent fracture, osteomyelitis or other acute bony abnormality." (*Id.* at 45.) On October 5, 2007, at St. Francis Medical Center, Barry Wisler, MD, amputated Rosario's left fifth toe due to "gangrene left foot." (Surgical Pathology Report, ECF No. 162-1 at 114.)

In *Connick v. Thompson*, 131 S.Ct. 1350 (2011), the Supreme Court most recently examined the standard for finding a municipal entity liable under § 1983 on the basis of a policy of inaction. In that case, a state court had vacated the defendant's convictions for attempted armed robbery and murder after it was revealed that, in the prosecution for attempted armed robbery, prosecutors had failed to disclose exculpatory evidence consisting of a swatch of fabric stained with the robber's blood that showed that the perpetrator had a blood type different from the defendant's. After a retrial for murder, the jury found Thompson not guilty. Thompson brought a § 1983 complaint against the district attorney's office (the "DA"), asserting the failure to disclose the evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), was caused by the DA's deliberate indifference to an obvious need to train the prosecutors in his office to avoid *Brady* violations.

A jury found the DA liable under § 1983 for failing to train the prosecutors, awarded $14 million in damages, and the office appealed. The Fifth Circuit affirmed, finding that Thompson did not need to present evidence of a pattern of similar *Brady* violations because Thompson had shown that the DA was on notice of an obvious need for *Brady* training through evidence that (a) prosecutors would undoubtedly be required to confront *Brady* issues, (b) resolution of *Brady* issues was often unclear, (c) erroneous decisions regarding

*Brady* evidence would result in serious constitutional violations, and (d) training in such *Brady* issues would have been helpful. *Connick*, 131 S.Ct. at 1358.  The Court of Appeals sitting *en banc* vacated the panel opinion and granted rehearing, but the Circuit divided evenly, thereby affirming.  *Id.*

The Supreme Court first noted that a local government's decision not to train certain employees may rise to the level of an official government policy under § 1983 where it amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  *Connick*, 131 S.Ct. at 1359 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  Because deliberate indifference requires proof that a municipal actor disregarded a known or obvious consequence of his action, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 131 S.Ct. at 1360.  The Court explained that a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Id.* (quoting *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 4099 (1997)).

22

The Court next observed that, instead of relying on a pattern of similar *Brady* violations, Thompson argued that "the *Brady* violation in his case was the 'obvious' consequence of failing to provide specific *Brady* training, and that this showing of 'obviousness' can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." *Connick*, 131 S.Ct. at 1361. Noting that, in a narrow range of circumstances, a pattern might not be necessary to show deliberate indifference, the Court found that "this case does not fall within the narrow range of 'single-incident' liability hypothesized in *Canton* as a possible exception to the pattern of violations necessary to prove deliberate indifference in § 1983 actions alleging failure to train." *Id.* at 1366. The Court held that the District Court "should have granted Connick judgment as a matter of law on the failure-to-train claim because Thompson did not prove a pattern of similar violations that would 'establish that the policy of inaction [was] the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* (quoting *Canton*, 489 U.S. at 395).

This Court holds that *Connick* controls the outcome of this case.[7] Although Rosario does not directly rely on the theory of

---

[7] This Court decided *Ross v. Monge* prior to the Supreme Court's ruling in *Connick*. Moreover, it bears noting that *Ross* involved a motion to dismiss a complaint under Rule 12(b)(6).

"single-incident" liability,[8] like the plaintiff in *Connick*, Rosario

implicitly argues that his gangrene and amputation were the obvious

consequences of CMS's failure to train and supervise Nurse Doe and

other care providers.  The Supreme Court rejected the

"single-incident" theory of liability in *Connick* on the ground that

"[a] district attorney is entitled to rely on prosecutors'

professional training and ethical obligations in the absence of

specific reason, such as a pattern of violations, to believe that

those tools are insufficient to prevent future constitutional

violations in the usual and recurring situations with which the

prosecutors must deal."  *Connick*, 131 S.Ct. at 1363 (citation and

internal quotation marks omitted).

Like the attorneys in *Connick*, the nurses employed by CMS

completed nursing degrees and were licensed.  This is not in dispute.

(*See, e.g.*, ECF Nos. 166-6 at 12-13, 175-5 at 15-16, 175-6 at 39.)

And like the plaintiff in *Connick*, Rosario has failed to point to

a pattern of violations of the Eighth Amendment rights of other

_____

[8] "Proof of a single incident of unconstitutional activity is not
sufficient to impose liability under *Monell*, unless proof of the
incident includes proof that it was caused by an existing . . . policy,
which policy can be attributed to a municipal policymaker."  *Brown
v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (quoting *City
of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality
opinion)).  This is because "a single incident of  . . . misbehavior
by a[n employee] is insufficient as sole support for an inference
that a municipal policy or custom caused the incident."  *Id*. (quoting
*City of Oklahoma* at 832) (Brennan, J., concurring).

diabetic inmates with foot or similar ulcers, which under *Connick*
is necessary to show that the professional training of Nurse Doe and
other nurses was insufficient to prevent deliberate indifference to
Rosario's foot ulcer.   While greater guidance regarding the care of
diabetic foot ulcers might have been helpful to CMS nurses, "showing
merely that additional training would have been helpful in making
difficult decisions does not establish municipal liability."
*Connick*, 131 S.Ct. at 1363.

The holding of *Connick* compels this Court to reject Rosario's
attempt to establish deliberate indifference by showing the
obviousness of a need for additional nurse training concerning the
care of diabetic foot ulcers and infections.   Because Rosario points
to no pattern of similar violations that would "'establish that the
policy of inaction [was] the functional equivalent of a decision by
[CMS] to violate the Constitution," this Court must grant summary
judgment in favor of CMS on the Eighth Amendment claim.[9]   *Connick*,

---

[9] Moreover, even in a case where a deficiency in a training program
is identified, a § 1983 plaintiff "must still prove that the
deficiency in training actually caused the . . . indifference to [the
plaintiff's] medical needs."   *City of Canton*, 489 U.S. at 391.
"That a particular officer may be unsatisfactorily trained will not
alone suffice to fasten liability on the city, for the officer's
shortcomings may have resulted from factors other than a faulty
training program." *Id.* at 390-91.   In this case, because Rosario
cites no other incident or inadequacy in his care constituting
deliberate indifference, this Court also holds that Rosario has not
produced evidence that any failure to train caused the violation of
Rosario's constitutional rights.

131 S.Ct. at 1366 (quoting *Canton*, 489 U.S. at 395). *See Almodovar v. City of Philadelphia*, ____ F. App'x, 2013 WL 2631536 (3d Cir. June 13, 2013) (affirming order granting summary judgment for city on inmate's claim that city's lack of training and supervision allowed another inmate to gain access to a knife used to attack him because inmate did not establish that failure to train evidenced deliberate indifference); *Jewell v. Ridley Twp.*, 497 F. App'x 182 (3d Cir. 2012) (where plaintiff who was injured in collision with drunk driver being pursued by police sued municipality for failing to properly train and supervise police conducting pursuits, summary judgment was affirmed because, "[w]ithout a pattern of constitutional violations during police pursuits involving the Ridley police, we cannot conclude that Ridley exhibited deliberate indifference in its efforts to train its officers"); *Li Min v. Morris,* 445 F. App'x 574 (3d Cir. 2011) (affirming summary judgment for city on § 1983 failure to train and supervise claim brought by restaurant owner who was robbed and assaulted by city's health inspector with a criminal record because plaintiff failed to point to evidence of any other employee of the city's health department with a criminal record who committed unlawful conduct in the course of his or her employment); *May v. Sanna*, Civ. No. 09-3253 (RMB), 2012 WL 1067686 at *12 (D.N.J. Mar. 29, 2012) (granting summary judgment for Lumberton on § 1983 excessive force claim because plaintiff failed to put forth evidence

showing that "Lumberton's inadequate training or supervision of [police officers] amounted to *deliberate indifference* to Plaintiff's rights and thereby caused his injuries").

E.  Supplemental Jurisdiction

Federal law provides that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Third Circuit has instructed that, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995)) (emphasis in *Hedges*).

Since the statute of limitations on Rosario's state claims is "tolled while the claim is pending and for a period of 30 days after it is dismissed," 28 U.S.C. § 1367(d), this Court discerns no unfairness in declining to decide his state claims. *See Munoz v. City of Union City*, 481 F. App'x 754, 761 n.8 (3d Cir. 2012); *Hedges*, 204 F.3d at 123-24. Because judicial economy, convenience, and fairness to the parties do not provide an affirmative justification in this case beyond any other case, this Court declines to exercise

27

supplemental jurisdiction. *See Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (where district court had granted summary judgment to defendants on inmate's § 1983 claim that medical officials were deliberately indifferent to his diabetic foot wound, court did not abuse discretion by declining to exercise jurisdiction over the remaining state malpractice claim); *King v. County of Gloucester*, 302 F. App'x 92, 99 (3d Cir. 2008) (finding no abuse of discretion where court declined to exercise supplemental jurisdiction over state claims after dismissal of federal claims).

### III. CONCLUSION

Based on the foregoing, this Court grants the motions to seal, dismisses defendants Nurse Doe and Corrections Officer Doe, grants summary judgment on the Eighth Amendment claim in favor of CMS, and declines to exercise supplemental jurisdiction as to the remaining state law claims.

Date:  June 25, 2013

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**